Docket No. No. 23 Civ. 8155 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TATIANA SOKOLVA, guardian of VIACHESLAV KARGIN,

                                                                           Plaintiffs,

-against-

CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (HHC), CAPTAIN HOWARD THOMPSON, CORRECTION OFFICER MOHAMMAD ULLAH, CORRECTION OFFICER FELICIA HARGRAVE, C.O.S JOHN AND HANE DOES 1-6, JOHN DOE 1 (INTAKE OFFICER), JOHN DOE 2 (INTAKE OFFICER HHC), JOHN DOE 3 (PLACEMENT OR CLASSIFICATION OFFICER),

                                                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF NEW YORK, HHC, THOMPSON, AND HARGRAVE'S MOTION TO DISMISS COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants City of New York,*
   *HHC, Hargrave, and Thompson*
   *100 Church Street, Room 3-196*
   *New York, N.Y.  10007*

   *Of Counsel:  Zachary Kalmbach*
   *Tel:  (212) 356-2322*
   *Matter No. 2023-106422*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS/PROCEDURAL HISTORY .............................................................. 1

LEGAL STANDARD .................................................................................................................. 2

ARGUMENT

    POINT I

        THE COURT SHOULD DISMISS OR STAY THIS
        ACTION PURSUANT TO THE *COLORADO RIVER*
        DOCTRINE ..................................................................................................... 3

        I.   The State and Federal Actions are Parallel ............................................... 4

        II.  The Colorado River Factors Urge Abstention .......................................... 5

    POINT II

        PLAINTIFFS HAVE FAILED TO STATE A CLAIM
        FOR MUNICIPAL LIABILITY .................................................................... 8

CONCLUSION ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Pages**

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004)......................................................................................8, 11, 12

Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,
    762 F.2d 205 (2d Cir. 1985)..................................................................................................5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..............................................................................................................3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..............................................................................................................3

City of Canton v. Harris,
    489 U.S. 378 (1989)............................................................................................................11

Colony Ins. Co. v. Danica Group, LLC,
    No. 13-CV-1714 (RRM) (MDG), 2014 U.S. Dist.
    LEXIS 12585 (E.D.N.Y. Sept. 8, 2014) ..................................................................................6

Connick v. Thompson,
    563 U.S. 51 (2011)................................................................................................ 10-11, 12

First Keystone Consultants, Inc. v. Schlesinger Elec. Consts., Inc.,
    862 F. Supp. 2d 170 (E.D.N.Y. 2012) ...................................................................................6

Goldtree Asset Mgmt., L.P. v. Longaberger Co.,
    448 F. Supp. 2d 589 (S.D.N.Y. 2006).....................................................................................6

Hickey v. City of New York,
    No. 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941
    (S.D.N.Y. Nov. 29, 2004),
    aff'd, 173 F. App'x 893 (2d Cir. 2006)..................................................................................10

Iacovacci v. Brevet Holdings, LLC,
    437 F. Supp. 3d 367 (S.D.N.Y. 2020).....................................................................................5

Iacovacci v. Monsticciolo,
    No. 18 Civ. 7984 (JFK), 2019 U.S. Dist. LEXIS 79376
    (S.D.N.Y. May 9, 2019).........................................................................................................4

JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC,
    No. 23 Civ. 7145 (JGK), 2024 U.S.
    Dist. LEXIS 29597 (S.D.N.Y. Feb. 21, 2024) ............................................................2, 3, 4, 7

**Cases**             **Pages**

Mann v. Alvarez,
   No. 96 Civ. 2641 (RWS), 1996 U.S. Dist. LEXIS 13789
   (S.D.N.Y. Sep. 19, 1996) ...................................................................................................7

Monell v. Dep't of Soc. Servs.,
   436 U.S. 658 (1978) ...........................................................................................8, 9, 10, 11

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
   460 U.S. 1 (1983) .................................................................................................................5

Mouchantaf v. Int'l Modeling & Talent Ass'n,
   368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005) .........................................................................6

Oklahoma City v. Tuttle,
   471 U.S. 808 (1985) .......................................................................................................8, 11

Rasmussen v. City of New York,
   766 F. Supp. 2d 399 (E.D.N.Y. 2011) ...............................................................................10

Rodriguez v. Winski,
   973 F. Supp. 2d 411 (S.D.N.Y. 2013) .................................................................................8

Sitgraves v. Fed. Home Loan Mortg. Corp.,
   265 F. Supp. 3d 411 (S.D.N.Y. 2017) .................................................................................2

Tatiana Sokolova, as proposed guardian of Viacheslav Kargin v. City of New
   York,
   Index No. 156354/22 ..........................................................................................................7

United States v. Pikna,
   880 F.2d 1578 (2d Cir. 1989) ..............................................................................................3

Vassiliou v. City of New York,
   N 18-CV-779 (EK) (VMS), 2021 U.S. Dist. LEXIS 3433
   (E.D.N.Y. Jan. 7, 2021) ....................................................................................................10

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992) ..............................................................................................11

Walsh v. City of New York,
   19 Civ. 9238 (AT), 2021 U.S. Dist. LEXIS 62982
   (Mar. 31, 2021) .................................................................................................................10

Woodford v. Cmty. Action Agency of Greene Cnty.,
   239 F.3d 517 (2d Cir. 2001) ................................................................................................4

**Cases**                                                                                                           **Pages**

Wray v. City of New York,
   490 F.3d 189 (2d Cir. 2007)..........................................................................................................8

Yan Ping Xu v. City of New York,
   No. 08 Civ. 11339 (DLC), 2010 U.S. Dist. LEXIS 127216
   (S.D.N.Y. Dec. 1, 2010).........................................................................................................2, 3

**Statutes**

42 U.S.C. § 1983............................................................................................................................1, 8

Fed. R. Civ. P. 12(b)(1)................................................................................................................2, 12

Fed. R. Civ. P. 12(b)(6).........................................................................................................1, 2, 8, 12

**PRELIMINARY STATEMENT**

Plaintiffs have brought essentially the same lawsuit in state and federal court. Plaintiffs could have brought all their claims in the first-filed state court action; but, instead, plaintiffs—who are represented by the same attorneys in both actions—have intentionally elected to waste scarce judicial resources and unduly burden defendants by bringing practically duplicative allegations and claims in two venues. This is the exact sort of conduct that the Colorado River doctrine was designed to prevent. The Court should refrain from encouraging such conduct by exercising its discretion to dismiss or stay this action pending resolution of the state action.

Additionally, the Court should dismiss plaintiffs' Monell claim pursuant to Rule 12(b)(6), as plaintiffs have failed to allege sufficient—or, really, any—facts in support of their conclusory allegation that a City policy or practice caused plaintiff's alleged constitutional violation. Plaintiffs' Monell claim should also be dismissed because plaintiffs have, *inter alia*, failed to identify a specific deficiency in a City training program that rises to the level of deliberate indifference.

**STATEMENT OF FACTS/PROCEDURAL HISTORY**

On June 7, 2023, plaintiffs filed a lawsuit against the City of New York, Howard Thompson, Mohammad Ullah,[1] Felicia Hargrave, and several "John Doe" correction officers in state court. See ECF No. 23-1. In the state action, plaintiffs allege various state-law causes of action, including intentional infliction of emotional distress ("IIED") and negligence pertaining to the alleged failure to protect plaintiff Kargin and pertaining to plaintiff Kargin's medical care, and also a negligent hiring, screening, retention, supervision, and training claim against the City. See id. On September 14, 2023, plaintiffs filed the instant suit, alleging § 1983 claims of deliberate

---

[1] Defendant Ullah has not been properly served.

indifference based on the same alleged failure to protect plaintiff Kargin and same alleged deficiency in plaintiff Kargin's medical care, and municipal liability based on, *inter alia*, the alleged failure to train, screen, supervise, and discipline City employees (*i.e.*, essentially mirroring plaintiffs' negligent training, screening, supervision, and retention claim in the state action).  See id.  Both actions are premised on substantially the same factual allegations.[2]  Compare ECF No. 1 at ¶¶ 24-66 with Ex. A at ¶¶ 33-70.

## LEGAL STANDARD

In Colorado River Water Conservation District v. United States, "the Supreme Court determined that a federal court may decline to proceed with a case, which is properly before it, when parallel litigation is pending in state court."  Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017).  In such a case, "[t]here must be exceptional circumstances, based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  Id.  "A motion to dismiss based on Colorado River is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure."  See JPMorgan Chase Bank, N.A. v. Avara US Holdings LLC, No. 23 Civ. 7145 (JGK), 2024 U.S. Dist. LEXIS 29597, at *12 (S.D.N.Y. Feb. 21, 2024) (quotations omitted).  A court may decide to stay or dismiss an action based on the Colorado River doctrine.  See id.; see also Yan Ping Xu v. City of New York, No. 08 Civ. 11339 (DLC), 2010 U.S. Dist. LEXIS 127216, at *11 (S.D.N.Y. Dec. 1, 2010) (Cote, D.J.) (staying federal action pending related state action).

"To survive a motion to dismiss [pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[2] There appears to be no dispute regarding this fact.  See ECF Nos. 23 and 24.

to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Though the Court must accept as true all well-pleaded facts, this does not extend to legal conclusions.  Iqbal, 556 U.S. at 678.  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]"  Twombly, 550 U.S. at 570.

## ARGUMENT

### POINT I

### THE COURT SHOULD DISMISS OR STAY THIS ACTION PURSUANT TO THE *COLORADO RIVER* DOCTRINE

The Court should dismiss or stay this action pending resolution of the parallel state proceeding, pursuant to the Colorado River doctrine.

"The decision as to whether to stay [or dismiss] a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court." Yan Ping Xu, 2010 U.S. Dist. LEXIS 127216, at *11 (Cote, D.J.) (quoting United States v. Pikna, 880 F.2d 1578, 1582 (2d Cir. 1989)).  "In deciding whether to abstain under Colorado River, a district court must first determine whether the federal and state court cases are parallel." JPMorgan Chase Bank, N.A., 2024 U.S. Dist. LEXIS 29597, at *12 (quotation omitted).  When considering whether to dismiss or stay an action pursuant to the Colorado River doctrine, a federal court should consider:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal

3

> law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Id. (quoting Woodford v. Cmty. Action Agency of Greene Cnty., 239 F.3d 517, 522 (2d Cir. 2001)).

## I.   The State and Federal Actions are Parallel

"Federal and state proceedings are parallel for purposes of abstention when the two proceedings are essentially the same—when there is an identity of parties, and the issues and relief sought are the same." JPMorgan Chase Bank, N.A., 2024 U.S. Dist. LEXIS 29597, at *13 (quotation omitted). Two actions are parallel when "the same events underlay both actions, and the defendants in the state and federal actions were closely related[.]" Id. "Perfect symmetry of parties and issues is not required." Id. Further "[t]wo actions are parallel if the 'main form of relief' sought is the same and if the relief covers 'the same essential issues,' even if 'part of the relief requested in the federal action differs from the relief requested in the state action[.]'" Id. at *17 (quoting Iacovacci v. Monsticciolo, No. 18 Civ. 7984 (JFK), 2019 U.S. Dist. LEXIS 79376, at *17 (S.D.N.Y. May 9, 2019)).

Here, the state and federal actions are undoubtedly "parallel" for purposes of abstention. The parties are the same, except that plaintiffs added HHC as a defendant in the federal action. However, HHC is simply an agency of the City. As such, there is an "identit[y] of parties." Id. at *13. Further, "the same events underlay both actions." Id. Indeed, both actions are indisputably based on the exact same facts. Finally, plaintiffs are requesting the same relief in both actions, *i.e.*, monetary damages arising from an alleged attack by another inmate and a subsequent alleged delay in medical care. Accordingly, the actions are parallel.

4

## II.     The Colorado River Factors Urge Abstention

The Colorado River factors weigh in favor of abstention. The first two factors are neutral as there is no property at issue and the state and federal fora are essentially co-located and therefore equally convenient to all parties.

With regard to the third factor, dismissal of this action will avoid piecemeal and inconsistent adjudication of plaintiffs' claims. "'By far the most important factor' in the Colorado River abstention analysis is the "'clear federal policy . . . [o]f avoidance of piecemeal adjudication.'" Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 377 (S.D.N.Y. 2020) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). This factor is a "paramount consideration" when a failure to abstain may result in "inconsistent disposition[s]" that "would breed additional litigation on assertions of claim and issue preclusion." Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985).

Here, plaintiffs have already commenced an action in a court of competent jurisdiction involving, practically, the same claims and essentially the same parties. As an initial matter, there is no question that plaintiffs could have brought the instant claims in the state action, if they so chose. Further, while plaintiffs brought state-law claims in the state action and federal claims in this action, the claims are substantially similar. Indeed, plaintiffs' federal deliberate indifference and state-law negligence and delay of medical care claims are all based on plaintiffs' allegations that the defendants failed to protect Mr. Kargin and delayed his medical care. Plaintiffs' federal deliberate indifference claim is simply an extension of plaintiffs' negligence claims; indeed, if plaintiffs cannot prove that the defendants were negligent towards their rights, they obviously cannot prove that the same defendants were deliberately indifferent based on the same set of facts. For that reason, it makes sense to let the state case proceed before the federal case. Additionally, while, as discussed *infra*, plaintiffs' Monell claim is overly broad, it appears to significantly

5

overlap with plaintiffs' state-law "negligent hiring, screening, retention, supervision and training" claim. Indeed, plaintiffs' Monell claim explicitly complains of a "[f]ailure to properly train, screen, supervise, or discipline employees"—mirroring plaintiffs' corresponding state-law claim. The rest of plaintiffs' Monell claim is based on the alleged failure to protect plaintiff—which is substantially subsumed by plaintiffs' state-law failure to protect claim against the City.

As such, this case implicates the "predominant concern expressed in Colorado River and its progeny" of "the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources." Mouchantaf c. Int'l Modeling & Talen Ass'n, 368 F. Supp. 2d 303, 307 (S.D.N.Y. 2005). The litigation of these two parallel actions will be a tremendous waste of resources—for defendants and the Courts—while at the same time allowing plaintiffs to potentially work a double recovery. Indeed, plaintiffs' attempt to litigate the same case in two venues (in a blatant case of forum shopping) results in the exact type of "needless duplication of proceedings and wasting of judicial resources" that the abstention doctrine was designed to avoid. See First Keystone Consultants, Inc. v. Schlesinger Elec. Consts., Inc., 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012); see also Goldtree Asset Mgmt., L.P. v. Longaberger Co., 448 F. Supp. 2d 589, 594 (S.D.N.Y. 2006) ("The existence of nearly identical claims in two different suits results in needless duplication of proceedings and wasting of judicial resources."); Colony Ins. Co. v. Danica Group, LLC, No. 13-CV-1714 (RRM) (MDG), 2014 U.S. Dist. LEXIS 12585, at *18 (E.D.N.Y. Sept. 8, 2014) (holding that it would be unduly burdensome to force defendant to litigate in both state and federal court at the same time and a waste of judicial resources to force two courts to adjudicate the same issues, particularly where the plaintiff "is engaging in transparent forum shopping"). The Court should not condone such conduct.

Further, "[s]hould this action be allowed to proceed," we may very well end up with "conflicting determinations of liability from" the state and federal actions. See JPMorgan Case Bank, N.A., 2024 U.S. Dist. LEXIS 29597, at *21. This, in turn, "would raise complicated questions about preclusion." Id. Accordingly, the third and "by far" most important factor weighs strongly in favor of abstention.

Fourth, plaintiffs chose to file the state action first. Moreover, defendants note that there has already been significant resources expended at the state level—in both New York Supreme Court and the Appellate Division—relating to this matter. See Tatiana Sokolova, as proposed guardian of Viacheslav Kargin v. City of New York, Index No. 156354/22. Accordingly, the fourth factor weighs in favor of abstention.

Regarding the fifth factor, although the claims plaintiffs have brought in the parallel proceedings sound, respectively, in state and federal law, this factor weighs in favor of abstention. While a federal court may be the preferred forum for the adjudication of federal claims, the issues raised in this action are not unfamiliar to New York State courts. And, leaving that aside, the costs and risks of redundant—and potentially inconsistent—litigation clearly tips the scales in favor of the Court's abstention from this action.

With respect to the sixth factor, there is no question that plaintiffs' rights will be adequately protected by the courts of the State of New York. See Mann v. Alvarez, No. 96 Civ. 2641 (RWS), 1996 U.S. Dist. LEXIS 13789, at *5 (S.D.N.Y. Sep. 19, 1996).

Accordingly, this case should be dismissed in favor of the resolution of the first-filed, pending state action. At a minimum, the Court should stay this action pending resolution of the state action.

# POINT II

## PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MUNICIPAL LIABILITY

Plaintiff purports to sue the City and HHC for municipal liability pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). As an initial matter, plaintiffs have already all but conceded that the Complaint fails to contain the factual allegations necessary to sufficiently allege a Monell claim. Indeed, in plaintiffs' latest correspondence with the Court, they stated that "the only result of [this motion] would be to have a re-plead Monell claim." ECF No. 24 at 3. Promising the Court via letter that "facts to make out the claim exist," without actually alleging such facts in the Complaint, is not sufficient to state a claim under Rule 12(b)(6). Id. In any event, to state a claim for municipal liability, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007); see also Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013).[3]

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 818, 828 (1985); Monell, 436 U.S. at 690-91. Thus, a plaintiff must prove that she suffered a violation of a federally protected right and that the violation was caused by either: (a) a written municipal policy; (b) a municipal custom or practice; (c) the decision of a municipal policymaker with final policymaking author; or (d) the failure of the municipality to train its employees such that the failure rises to the level of deliberate indifference to the constitutional

---

[3] Municipalities can only be liable for "their own illegal acts." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). This is to say, the City of New York cannot be "held liable under § 1983 on a theory of *respondeat superior*." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

rights of others. Monell, 436 U.S. at 658. Here, plaintiffs appear to rest their Monell claim on the "custom or practice" and failure to train theories. (See ECF No. 1 at ¶ 75). The Complaint is deficient under both theories, as plaintiffs have failed to adequately allege that (1) any municipal custom or practice caused plaintiffs' alleged constitutional violations; and (2) that the City was deliberately indifferent or failed to adequately train its employees, let alone that any such deliberate indifference or inadequate training was the "moving force" behind plaintiffs' underlying claims.

First, it is not entirely clear what specific custom or policy plaintiffs are alleging caused the alleged constitutional violation. That is, the "unconstitutional practices" on which plaintiff base their Monell claim are: (1) "[f]ailure to provided adequate protection to pretrial detainees in its custody"; (2) "[f]ailure to provide adequate protection to convicted prisoners who are taken into custody pursuant to a parole violation"; (3) "[f]ailure to properly train, screen, supervise, or discipline employees . . . "; (4) "[f]ailure to adequately perform intake procedures . . . "; (5) "[f]ailure to adequately review transfers between facilities and inmate placements to ensure the appropriate protections can be offered"; (6) "[f]ailure to maintain a safe environment for inmates who have physical ailments that were known to prison officials"; and (7) "[f]ailure to provide prompt medical care to individuals who have been injured while in custody." ECF No. 1 at ¶ 75. This litany of purported practices is extremely conclusory, and not supported by actual allegations of fact sufficient to plausibly state a Monell claim. Indeed, the "facts" (if they can even be called facts) plaintiffs allege as evidence of this broad set of purported practices consist mainly of citations to a number of news articles (id. at ¶¶ 80, 82-84), a snippet from a public statement made by a former public official (id. at ¶ 78), a 1975 lawsuit (id. at ¶ 97), and references to a report regarding general statistics as to the number of inmate-on-inmate fights on Rikers Island (id. at ¶ 79).

This hodgepodge of various citations, regarding a variety of different topics, is simply not sufficient to plausibly state a Monell claim. Indeed, the law is clear that plaintiffs' "exceptionally broad" allegations cannot support a Monell claim under the "custom or practice" theory. Vassiliou v. City of New York, N 18-CV-779 (EK) (VMS), 2021 U.S. Dist. LEXIS 3433, at *14 (E.D.N.Y. Jan. 7, 2021). ("'When a plaintiff tries to fall within Monell by defining the alleged 'custom or policy' as broadly as plaintiff[] ha[s] here, he takes an almost impossible burden upon himself.'") (quoting Rasmussen v. City of New York, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011)); see also Hickey v. City of New York, No. 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941, at *21 (S.D.N.Y. Nov. 29, 2004) (explaining that court cannot "take judicial notice of a number of highly-publicized episodes of alleged police abuse . . . and extrapolate from those assumptions an effect on the present episode"), aff'd, 173 F. App'x 893 (2d Cir. 2006); Walsh v. City of New York, 19 Civ. 9238 (AT), 2021 U.S. Dist. LEXIS 62982, at *28-29 (Mar. 31, 2021) ("The Court rejects Plaintiff's request that it consider news articles attached to his complaint. These articles address various types of police misconduct, encompassing topics not clearly relevant to Plaintiff's allegations."). Plaintiffs have fallen far short of plausibly alleging any specific custom or policy which could have possibly caused the defendant correction officers to, allegedly, fail to protect plaintiff and delay his medical care. Accordingly, plaintiffs cannot maintain a Monell claim under the "custom or practice" theory.

Plaintiffs' purported "failure to train" theory is also deficient. Municipal liability "is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011); see City of Oklahoma City, 471 U.S. at 822-23 ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell."). Where, as here, liability is based on the failure to train or supervise, a

10

plaintiff must allege "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388. There are three elements to this type of Monell claim. Id. "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." Id. (citing Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992)). "'Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.'" Id. "'Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. In addition to deliberate indifference, a plaintiff must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)). In other words, a plaintiff must demonstrate that the municipal employee's "'shortcomings . . . resulted from . . . a faulty training program' rather than from negligent implementation of a sound program or other, unrelated circumstances." Id. at 120-30 (quoting City of Canton, 489 U.S. at 390-91). Plaintiffs must allege that the City was on notice and that, absent additional specified training, it was "highly predictable" that police officers would make incorrect decisions with respect to telling the truth in paperwork and that it is "*so* predictable" that failing to provide police officers with the specified training amounted to a "conscious disregard for" citizens' Fourth Amendment rights. Connick, 131 S. Ct. at 1365 (emphasis in original).

Here, plaintiffs have failed to identify any "specific deficiency in the city's training program," let alone that such deficiency is "closely related" to and "actually caused" plaintiffs'

alleged injuries. Amnesty Am., 361 F.3d at 129. Indeed, the "absence of any concrete allegation as to a specific training deficiency precludes plaintiff[] from proceeding on this theory." Luna, 2019 U.S. Dist. LEXIS 135376, at *46. As such, plaintiffs' conclusory allegations cannot support a Monell claim based on the "failure to train" theory.

Accordingly, plaintiffs have failed to sufficiently allege their Monell claim, and thus it should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants City of New York, HHC, Thompson, and Hargrave respectfully request that the Court grant their motion pursuant to Rules 12(b)(1) and 12(b)(6) in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 13, 2024

>HON. SYLVIA O. HINDS-RADIX
>Corporation Counsel of the
>  City of New York
>*Attorney for Defendants City, HHC, Thompson, and Hargrave*
>100 Church Street
>New York, New York 10007
>(212) 356-2322
>
>By: /s/ *Zachary Kalmbach*
>   Zachary Kalmbach
>   *Senior Counsel*

CC: Via ECF
   All counsel of record